FILED
2013 Apr-10  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| BOBBY PERRY, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | |
| | ) | 7:11-cv-994-LSC |
| BATESVILLE CASKET CO., | ) | |
| INC., BATESVILLE LOGISTICS, | ) | |
| AND HILLENBRAND, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Before the Court is Defendants' motion for summary judgment, filed on November 15, 2012. (Doc. 29.) Defendants seek summary judgment in their favor on Plaintiff's claims for violation of the Alabama Age Discrimination and Employment Act (AADEA) and the Fair Labor Standards Act (FLSA). Defendants' motion is fully briefed and ripe for decision. For the reasons described below, the motion for summary judgment is due to be GRANTED.

## II.    Facts[1]

Batesville Casket Co., Inc. ("Batesville Casket") and Batesville Logistics, Inc. ("Batesville Logistics") are indirect, wholly-owned subsidiaries of Hillenbrand, Inc. ("Hillenbrand"). From September 20, 1996, to August 20, 2012, Plaintiff was employed as a truck driver for Batesville Logistics.  Plaintiff was an at-will employee, operating without an employment contract, and was paid hourly.

During his employment, Plaintiff completed a training session regarding Batesville Logistics' Code of Ethical Business Conduct (the "Code") as well as other company policies and procedures, and he signed documents acknowledging this training. (Doc. 30, Ex. 1 at 80:1-83:6; Ex. 5.) The Code directs employees to keep accurate records of their hours worked and warns that "[a]ltering, falsifying, tampering with time records . . . may result in disciplinary action." (Doc. 30, Ex. 6.) Company policy also sets forth that falsifying company records can result in termination. (Doc. 30, Ex. 8.) Additionally, Plaintiff attended a safety meeting on March 24, 2010, where he signed a document confirming his attendance and

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

understanding that falsification of any documents turned in to management would result in disciplinary action. (Doc. 30, Ex. 10.)

During Plaintiff's employment, GPS records were generated from his company truck, indicating stops, length of time stopped, miles traveled, and idle time. Plaintiff's former supervisor, Michelle Elder, routinely spot-checked driving records to ensure the time cards and manifests matched GPS records for each driver. In the process of one of these routine checks, Elder discovered an inconsistency between Plaintiff's time sheet for December 26, 2007, which stated he stopped driving at 5:30 p.m., and the GPS records for that date, which revealed the truck stopped at 4:16 p.m. When Plaintiff was confronted about the discrepancy, he described it as an "honest mistake." (Doc. 30, Ex. 1 at 110:18–23.) Plaintiff was warned that falsifying documents can result in immediate termination, and he signed a memorandum to his personnel file documenting the discrepancy and the warning he received. (Doc. 30, Ex. 12.)

On August 12, 2010, Plaintiff was again confronted by Elder regarding inconsistencies between his time card and his truck's GPS data, and once again Plaintiff suggested the discrepancy was a result of an "honest mistake." (Doc. 31, Ex. 1 at 151:21–152:4.) Following the incident, Elder reviewed Plaintiff's records from October 2009, through August 2010, finding sixteen different discrepancies between

reported time and GPS data. Elder subsequently created a spreadsheet to document her findings. (Doc. 30, Ex. A to Ex. 3.) Though Plaintiff offered Elder no excuse other than that of an "honest mistake" when initially confronted, he later testified in his deposition that filling out paperwork accounted for 15 to 20 minutes of the time discrepancy in 14 out of 16 of the incidents listed on Elder's spreadsheet. (Doc. 30, Ex. 1 at 191:15–18, 201:15–4; 203:21–204:6; 204:13–205:15; 206:1–11; 206:13–207:6; 207:11–21; 208:4–209:2; 209:3–22; 210:10–211:3; 211:7–22; 212:3–19; 213:1–16; 214–216:12.) This explanation was not offered or discussed until after litigation began.

Citing the time discrepancies between Plaintiff's recorded time card and the GPS records, Batesville Logistics terminated Plaintiff on August 20, 2010. Plaintiff was 54 years old on the date of termination. Plaintiff claims he was replaced by Tim Lynn, a person under the age of forty. Plaintiff proffers two evidentiary bases for this assertion. First, Plaintiff relies on Elder's deposition testimony, where she admits that Lynn, a part-time employee, had requested more hours before Plaintiff was terminated. (Doc. 30, Ex. 4, 69:8-23.) Second, Plaintiff relies on Lynn's time cards from before and after Plaintiff's termination, which he alleges demonstrate that Lynn was hired as his replacement. (Docs. 32-6 & 33.) Elder admitted that Lynn received more hours, often adding up to 40 hours per week, from the date of Plaintiff's

termination until November 2010. (Doc. 30, Ex. 4, 72:8-74:22.) However, she testified that, in November 2010, Batesville Logistics hired two part-time employees, Robert Russell and Tommy Chesser, aged 65 and 61, respectively, to replace Plaintiff. (Doc. 30, Ex. 4, 74:21-75:2.)

## III.   Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56 "requires the nonmoving

party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted); *see also* Fed. R. Civ. P. 56(c). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp.*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## IV.   Analysis

### A.   Dismissal of Batesville Casket and Hillenbrand

Defendants first contend that Batesville Casket and Hillenbrand should be dismissed from this action on the basis that they were not Plaintiff's employers. Plaintiff admitted in deposition that he had no claim against Hillenbrand or Batesville Casket unless the companies are considered "a whole" with Batesville Logistic, his actual employer. (Doc. 30, Ex. 1 at 131:16-132:9). Additionally, Plaintiff stated in his brief that he is willing to dismiss parties that are not responsible for his termination. However, Plaintiff stated that he has not been provided with proper evidence of "the corporate and/or working relationship among the named Defendants." (Doc. 32, p. 10). In response, Defendants called attention to their discovery response identifying

Batesville Casket and Batesville Logistics as "indirect, wholly-owned subsidiaries of Hillenbrand, Inc." (Doc. 35, at 10, referring to Defs.' Ex. 14 at 7.)

"It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998). Plaintiff could pierce the corporate veil to impose liability on Hillenbrand or Batesville Casket "only after a strong showing of such control of the subsidiary by the parent to effectively render the subsidiary a mere instrumentality of the parent, and of some fraud connected with the use of the parent/subsidiary corporate form." *Alabama Power Co. v. Tennessee Valley Authority*, 948 F. Supp. 1010, 1026 (N.D. Ala. 1996).

The evidence demonstrates that Batesville Logistics was Plaintiff's legal employer at all times relevant to this dispute. Plaintiff has not proffered any evidence showing that Hillenbrand exercised such control as to render Batesville Logistics a mere instrumentality, nor has he suggested fraud in the corporate form between the entities. Further, even if a controlling parent-subsidiary relationship existed, this would not place liability on a fellow subsidiary such as Batesville Casket. Because Plaintiff has not demonstrated that either Hillenbrand or Batesville Casket were

involved in the alleged unlawful conduct, summary judgment is due to be GRANTED in favor of these defendants, and both are due to be DISMISSED from the current action.

### B.    AADEA Claim

The AADEA prohibits employers from discriminating "in employment against a worker 40 years of age and over in hiring, job retention, compensation, or other terms or conditions of employment." Ala. Code § 25-1-21 (1975). Though Plaintiff's claim is brought under the AADEA, Alabama and federal courts have held that the AADEA uses the same principles and analytical framework as the federal Age Discrimination in Employment Act (ADEA). *See, e.g.*, *Robinson v. Ala. Cent. Credit Union,* 964 So. 2d 1225, 1228 (Ala. 2007) (citing *Bonham v. Regions Mortg., Inc.*, 129 F. Supp. 2d 1315, 1321 (M.D. Ala. 2001)); *Ehrhardt v. Haddad Restaurant Group, Inc.*, 443 F. App'x 452, 454 (11th Cir. 2011); *see also* Ala. Code § 25-1-29 (expressly providing that "the remedies, defenses, and statutes of limitations, under [the AADEA] shall be the same as those authorized by the federal Age Discrimination in Employment Act . . . .").

The standard to be applied in a given case differs depending on whether a plaintiff produces direct evidence of discrimination motivating the adverse

employment decision, or only produces circumstantial evidence sufficient to allow an *inference* of discrimination. If a plaintiff presents direct evidence that his employer unlawfully discriminated against him, then summary judgment is inappropriate and the burden of persuasion at trial should shift to the defendant to prove by a preponderance of the evidence that it would have made the same decision without the discriminatory motive. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998). Direct evidence is defined as "only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Akouri v. State of Fla. Dept. Of Transportation*, 408 F.3d 1338, 1347 (11th Cir. 2005) (quoting *Carter*, 132 F.3d at 641). Plaintiff has not alleged or produced any direct evidence of discrimination such as "blatant remarks" indicating he was discriminated against based on age, but instead, bases his claim on circumstantial evidence.[2]

The Eleventh Circuit applies the burden-shifting scheme first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in cases, like this one, where a plaintiff offers circumstantial evidence to prove a claim of discrimination. *See Cofield*

---

[2] Plaintiff concedes as much in his brief when he states that "[c]ircumstantial evidence of discrimination, such as that presented by Mr. Perry, is the only evidence that should be expected in an employment discrimination case." (Doc. 32 at 18.)

*v. Goldkist, Inc.*, 267 F.3d 1264, 1268 n.6 (11th Cir. 2001) ("Although the *McDonnell Douglas* framework originally applied to Title VII cases, it is now widely accepted that the framework applies to claims of discrimination under the ADEA as well."). Under this scheme, the plaintiff bears the initial burden of producing circumstantial evidence of discrimination and establishing a prima facie case. If a prima facie case is established, the burden then shifts to the employer to "respond with a legitimate, non-discriminatory reason for its actions." *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). If met, the burden then shifts back to the plaintiff to show the employer's proffered reason "was a pretext to mask unlawful discrimination." *Id.* (citing *Walker v. NationsBank of Fla., N.A.,* 53 F.3d 1548, 1556 (11th Cir. 1995)).

      1.     *Prima Facie Case*

The plaintiff must first establish a prima facie case of discrimination. For the plaintiff to prove his prima facie case, he must show:

> (1) that he was a member of the protected group of persons between the ages of forty and seventy; (2) that he was subject to adverse employment action; (3) that a substantially younger person filled the position that he sought or from which he was discharged; and (4) that he was qualified to do the job for which he was rejected.

*Turlington*, 135 F.3d at 1432. The Supreme Court recently clarified that an ADEA plaintiff "must prove that age was the 'but-for' cause of the employer's adverse

decision." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009). The Eleventh Circuit has held that the *Gross* standard applies within the *McDonnell Douglas* framework:

> Because the but-for causation standard of *Gross* is consistent with the *McDonnell Douglas* framework where the burden of persuasion to show discrimination remains at all times with the plaintiff, we will apply the *McDonnell Douglas* framework to determine whether [the plaintiff] established a prima facie case that age discrimination was the but-for cause of his adverse employment action.

*Horn v. United Parcel Services, Inc.*, 433 F. App'x 788, 793 (11th Cir. 2011).

Defendants do not dispute that Plaintiff has proven membership in the protected group, the occurrence of an adverse employment action, or his qualifications to perform the job. Defendants, however, do dispute Plaintiff's claim that he was replaced by a "substantially younger" person. Plaintiff contends he was replaced by Tim Lynn, an existing part-time employee under the age of 40, and he presents evidence, via employee time cards, to support his own testimony and belief that Lynn's hours were increased from part-time to full-time immediately following Plaintiff's dismissal. (Doc. 31, Ex. 4 at 69:8-70:10, 72:1-75:2.) Defendants respond that Plaintiff's driving routes were initially spread among a group of currently employed drivers, aged 40, 53, 61, and 65, and Lynn was merely one of those employees. (Doc. 30, Ex. 3 at ¶¶ 16-17.) Defendants contend that two part-time employees, Tommy

Chesser and Robert Russell—aged 65 and 61 years old—were eventually hired as Plaintiff's official replacements in October 2010 and January 2011, respectively. (Doc. 30, Ex. 3 at ¶ 19.) Additionally, Defendants argue that Lynn's time cards show his hours were cut back to part-time in November 2010 pursuant to the hiring of Chesser, and that he eventually left Batesville Logistics because he was never made a full-time employee. (Doc. 31, Ex. 4 at 74:17-75:2; Doc 32-2.)

A reasonable argument can be made that Plaintiff has failed as a matter of law to establish a prima facie case of age discrimination. The District Court for the Middle District of Alabama has stated that "an employer only replaces an employee by hiring or reassigning someone else to do his duties; it does not suffice to show that the employer merely spread around the plaintiff's work 'among other existing employees already performing related work." *Howard v. Steris Corp.*, 886 F. Supp. 2d 1279, 1300 (M.D. Ala. 2012) (quoting *Puckett v. McPhillips Shinbaum, L.P.*, 2008 WL 906569 (M.D. Ala. Mar. 31, 2008)). There is certainly some evidence to support Defendants' position that Plaintiff's work was merely spread among several other currently employed drivers, and that Lynn was merely one of several employees to pick up extra hours in the interim period before Plaintiff's actual replacement was hired. However, it is also true that Plaintiff's evidence at least creates a factual question about whether

Lynn was Plaintiff's replacement, even if just for the interim period. Either way, the Court does not see a reason to decide this issue. As described in greater detail below, even accepting that Plaintiff established a prima facie case of age discrimination, his claim nonetheless fails because he cannot show that Defendants' proffered explanation for the employment decision is pretext for illegal discrimination. Thus, for purposes of this opinion, the Court assumes Plaintiff has satisfied his burden of making out a prima facie case of age discrimination.

> 2.    *Proffered Legitimate Reason and Pretext.*

Assuming, *arguendo*, that Plaintiff has established a prima facie case of age discrimination, Plaintiff has nonetheless failed to demonstrate that Defendants' legitimate non-discriminatory reason for the termination decision is pretext for illegal discrimination. The burden of offering a legitimate non-discriminatory reason for the employment action is "exceedingly light" since the defendant only has to produce, and not prove, a legitimate reason. *Walker v. Nationsbank of Fla. N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995) (quoting *Perryman v. Johnson Products Co., Inc.*, 698 F.2d 1138, 1142 (11th Cir. 1983)). Defendants submit sixteen instances where discrepancies existed between Plaintiff's time-card and the GPS data produced by his truck. The Court agrees that these discrepancies constitute a legitimate non-discriminatory

reason for the termination.

Because Defendants have met their burden, the burden shifts back to Plaintiff to show that Defendants' proffered reason is mere pretext for illegal discrimination. *See Mitchell v. USBI Co.*, 186 F.3d 1352, 1354 (11th Cir. 1999); *Mora v. Jackson Memorial Foundation, Inc.*, 597 F.3d 1201, 1204 (11th Cir. 2010). A plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Kragor v. Takeda Pharmaceuticals America, Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Plaintiff argues that Defendants miscalculated the discrepancies, neglecting to add the time necessary for completion of paperwork and post-trip equipment inspections. Additionally, Plaintiff argues that company policy allows time to be rounded up to the nearest 15 minutes. (Doc 31, Ex. 4 at 66:11-69:7). "When a plaintiff chooses to attack the veracity of the employer's proffered reason, the inquiry is limited to whether the employer gave an honest explanation of its behavior." *Kragor*, 702 F.3d at 1310–11 (internal quotations omitted). "An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate

nondiscriminatory reason for termination." *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993).

Plaintiff argues that the contradiction between the time calculations offered by Defendants and the recalculated times including allocation for paperwork and inspection are sufficient to rebut Defendants' alleged good faith belief that Plaintiff was falsifying his time cards. In support of this position, Plaintiff cites to the Eleventh Circuits recent decision in *Kragor*, where the court stated that "under the [ADEA] a contradiction of the employer's proffered reason for the termination of an employee is sometimes enough, when combined with other evidence, to allow a jury to find that the firing was the result of unlawful discrimination." *Kragor*, 702 F.3d at 1307. *Kragor*, however, is distinguishable from the case at hand. In *Kragor*, the specific contradiction cited by the court was that "the corporate executive who terminated the plaintiff for alleged misconduct later said that the plaintiff was an exceptional employee who had done nothing wrong, had done everything right, and should not have been fired." *Id*. This type of contradiction throws doubt upon the employer's good faith belief in its own explanation, something that does not occur in the instant case.

In the instant case, even if the time discrepancies alleged by Defendants are recalculated to include time for paperwork and rounding, there are still two days, July

29, 2010 and August 10, 2010, with overestimated times for which Plaintiff has no explanation. (Doc. 31, Ex. 1 at 192:22-194:18 and 189:10-190:9). Plaintiff was questioned regarding these time discrepancies and had the opportunity to make his additional time argument to his supervisor before the decision was made to fire him. However, Plaintiff only claimed to have made "an honest mistake." (Doc. 31, Ex. 4 at 151:7-152:4). Without even suggesting the additional time as an explanation for the discrepancies, Defendants had no way of knowing, or even guessing, what amount of time, if any, Plaintiff spent on paperwork or inspections. Accordingly, Plaintiff has not presented any evidence to cast doubt on Defendants' good faith belief that Plaintiff was falsifying his time.

Drawing all inferences in the favor of Plaintiff, this court finds no genuine issues of material fact. Even assuming the evidence proffered by Plaintiff establishes a prima facie case of discrimination under the AADEA, Defendants have proffered a legitimate, non-discriminatory reason for Plaintiff's dismissal and Plaintiff has not demonstrated such reason is pretext for illegal discrimination. Thus, the Court finds Defendants' Motion for Summary Judgment is due to be GRANTED on Plaintiff's AADEA claim.

## C.    FLSA Claim

In his Brief in Response to Defendants' Motion for Summary Judgment, Plaintiff states that "Defendants are entitled to summary judgment on Plaintiff's FLSA claim." (Doc. 32, p. 23). The Court deems this response to admit to all the statements and arguments regarding the FLSA claim contained in Defendants' Motion for Summary Judgment. Because there are no genuine issues of material fact, and even Plaintiff agrees that Defendants are entitled to judgment as a matter of law, Defendants' Motion Summary Judgment is due to be GRANTED with respect to Plaintiff's FLSA claim.

## V. Conclusion

For the forgoing reasons, Defendants' Motion for Summary Judgment (Doc. 29), is due to be GRANTED in all respects. A separate order will be entered consistent with this Opinion.

Done this 10th day of April 2013.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]